UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN MILLER,

    Plaintiff,

v.

                                  Case No. 07-14965

                                  Honorable Patrick J. Duggan

SANILAC COUNTY and JIM
WAGESTER,

    Defendants.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 18, 2009.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

This action arises from Paul Miller's arrest on February 19, 2006, for reckless driving and several other traffic code violations and civil infractions. All charges were later dismissed. Plaintiff alleges that Sanilac County and Jim Wagester, the deputy sheriff who arrested him, (collectively "defendants") violated his federal civil rights and committed various torts under state law. Presently before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), filed on October 30, 2008. The motion has been fully briefed and the Court held a motion hearing on February 6, 2009. For the reasons set forth below, the Court grants defendants' motion.

**I. Factual and Procedural Background**

Shortly after midnight on February 19, 2006, Deputy Wagester observed Miller's vehicle traveling southbound on Sheldon road in Sanilac County, Michigan. Although the parties dispute the speed at which Miller was driving when Deputy Wagester first observed Miller's vehicle, Miller admits that he proceeded through an intersection marked by a stop sign at approximately 30 miles per hour.[1] Deputy Wagester, who had been parked in a drive on the intersecting road, pulled out behind Miller and activated the emergency lights on his fully marked patrol car. When Miller came to a stop,[2] Deputy Wagester approached his vehicle and requested Miller's license, registration, and insurance information. Miller then claims that he removed his seatbelt to retrieve the documents but Deputy Wagester maintains that Miller had not been wearing his seatbelt. Ultimately, Miller produced his license for Deputy Wagester but Deputy Wagester returned to his patrol car while Miller searched his glove box for registration and insurance information.

At some point during their initial interaction, Deputy Wagester believed that he smelled alcohol on Miller's breath. After running a check on Miller through the law enforcement information network, Deputy Wagester learned that Miller had been arrested the previous month for operating a vehicle while intoxicated ("OWI"). Deputy Wagester returned to Miller's vehicle and asked Miller to step out to perform several field sobriety tests. Miller

---

[1] Deputy Wagester estimated Miller's initial speed to be 60 miles per hour with Miller slowing to about 30 miles per hour as he went through the intersection. Deputy Wagester did not observe Miller attempting to stop at the intersection. Meanwhile, Miller claims that he was driving a consistent 30 miles per hour along Sheldon and that he tried to stop for the intersection. Miller asserts that he slid through the intersection because of ice. The parties agree that there were icy spots on the road that night.

[2] Miller asserts that he pulled over immediately. Deputy Wagester, however, claims that Miller did not pull over for a quarter mile.

2

claims that he was never told whether he passed or failed the tests but Deputy Wagester maintains that Miller failed all but one. Deputy Wagester then requested that Miller submit to a preliminary breath test ("PBT") but Miller refused.

Thereafter, Deputy Wagester placed Miller under arrest for reckless driving. Miller claims that Deputy Wagester effected the arrest by spinning him around, kicking his feet apart, and slamming him against his vehicle. Miller concedes, however, that he was not hurt by any of these actions. Deputy Wagester handcuffed Miller behind his back and checked the tightness of the cuffs by ensuring that two fingers fit between the cuffs and Miller's wrists. Miller was then placed in Deputy Wagester's patrol car. In the end, Deputy Wagester estimates that Miller had been out of his vehicle for six to eight minutes but Miller claims it had been 45 minutes. The temperature that night was, at most, in the single digits with a windchill that was likely below zero. Miller never complained to Deputy Wagester that he was cold.

Upon arrest, Deputy Wagester transported Miller to the jail at the Sanilac County Sheriff's Department. After they arrived, Miller complained that the handcuffs were too tight on his wrists. Deputy Wagester removed the handcuffs shortly after Miller's complaint. While processing Miller, jail personnel requested that Miller submit to a PBT. Miller again refused but offered to submit to a blood test instead. Meanwhile, Deputy Wagester had secured a search warrant from a magistrate judge authorizing him to draw Miller's blood for further investigation of a suspected OWI. Miller was transported to a nearby hospital for the blood draw. The individual who drew Miller's blood observed that Miller was shaking and was cold to the touch. Miller claims to have passed out from the cold at some point while

3

he was at the jail although he indicated on a medical questionnaire that he did not need medical attention, had not recently fainted, and was in good physical condition.

Ultimately, Deputy Wagester wrote seven tickets for Miller: failure to use a seatbelt, no proof of registration, no proof of insurance, reckless driving, refusal to submit to a PBT, minor in possession, and 0.02 no tolerance law violation. Miller left the jail on February 19, 2006, on a personal recognizance bond. The next week, Miller's blood test results came back indicating that Miller's blood-alcohol level was 0.00. In early April, all charges against Miller related to this case were dismissed. A few days later, Deputy Wagester requested that the lab test Miller's blood for controlled substances. That test came back negative.

Miller filed the present case against Deputy Wagester and Sanilac County on November 20, 2007. Against Deputy Wagester, Miller alleges three constitutional violations pursuant to 42 U.S.C. § 1983–use of excessive force, Fourth Amendment search and seizure violations, and malicious prosecution–and four state tort claims–assault and battery, false arrest/false imprisonment, malicious prosecution, and gross negligence. Miller also alleges that Sanilac County is liable for Deputy Wagester's constitutional violations because it inadequately trains and supervises its officers. In the pending motion for summary judgment, Deputy Wagester argues that he is entitled to qualified and governmental immunity on all counts and Sanilac County asserts that Miller failed to state a claim against it.

## II. Standard of Review

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

### III. Deputy Wagester

Deputy Wagester asserts that he is entitled to some form of immunity on each of the seven claims against him. As to the three federal constitutional claims, Deputy Wagester argues that he is entitled to qualified immunity; as to the four state tort claims, Deputy Wagester claims he is entitled to governmental immunity as provided by Michigan law. *See*

Mich. Comp. Laws § 691.1407.  Miller, however, maintains that there are issues of fact that must be submitted to a jury.

**A. Section 1983 Federal Constitutional Claims**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).  The second requirement is not in dispute in this case.  "Nevertheless, government officials performing discretionary functions are shielded from liability through 'qualified immunity' if they violate an individual's constitutional rights, but the violated right was not 'clearly established' at the time of the official's actions." *Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007). The Court analyzes claims of qualified immunity according to a three-part test:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).  The question of qualified immunity is submitted to a jury only if "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury." *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989).

**1. Malicious Prosecution**

6

Even viewing the evidence in the light most favorable to Miller, Miller has failed to establish a malicious prosecution claim. "A plaintiff can recover for malicious prosecution under 42 U.S.C. § 1983 if the elements of a Michigan state law malicious prosecution claim are proven." *Pierzynowski v. Police Dept. City of Detroit*, 941 F. Supp. 633, 642 (E.D. Mich. 1996). To succeed on a malicious prosecution claim under Michigan law, a plaintiff must prove:

> (1) the defendant has initiated a criminal prosecution against him, (2) the criminal proceedings terminated in his favor, (3) the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.

*Walsh v. Taylor*, 263 Mich. App. 618, 632-33, 689 N.W.2d 506, 516-17 (2004).

Of the seven tickets written by Deputy Wagester, four do not constitute "criminal prosecutions" against Miller. *See* Mich. Comp. Laws §§ 257.328, 257.223, 257.625a(2)(d), 257.710e (designating failure to provide proof of insurance, failure to provide proof of registration, refusal to submit to a PBT test, and failure to wear a seatbelt as civil infractions). As to the three criminal tickets–reckless driving, minor in possession, and violation of the 0.02 no tolerance law–Deputy Wagester had probable cause. An officer has probable cause when "the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." *Henry v. United States*, 361 U.S. 98, 102, 80 S. Ct. 168, 171 (1959).

In this case, Miller admits that he ran a stop sign going approximately 30 miles per hour and Deputy Wagester asserts that he smelled alcohol on Miller's breath, that Miller's eyes were glassy, and that Miller failed all but one of the field sobriety tests. (Wagester's Dep.

at 41, 44, 52.)  Although the blood test subsequently established that Miller did not have alcohol in his system, Deputy Wagester was unaware of this fact at the time he issued the tickets.  Furthermore, Miller has not argued that he actually passed the field sobriety tests or that Deputy Wagester lied about his other perceptions.  Under the facts and circumstances known to Deputy Wagester, then, probable cause existed to issue the tickets for reckless driving, minor in possession, and violation of the 0.02 no tolerance law.  Consequently, Deputy Wagester is entitled to summary judgment on Miller's malicious prosecution claim.

**2. Unlawful Seizure: Arrest**

Miller next claims that Deputy Wagester arrested him in violation of his Fourth Amendment rights.  Like his malicious prosecution claim, Miller's claim of unlawful seizure requires proof that Deputy Wagester arrested him without probable cause.  *See Fox v. DeSoto*, 489 F.3d 227, 235-37 (6th Cir. 2007).  Therefore Deputy Wagester is entitled to summary judgment on this claim for the reasons discussed above.

**3. Unlawful Search and Seizure: Blood Tests**

Miller also claims that Deputy Wagester violated his Fourth Amendment rights by requesting that the lab test his blood sample for controlled substances after the first analysis came back negative for alcohol.[3]  Miller argues that Deputy Wagester obtained the search warrant in order to test for alcohol and that testing for anything other than alcohol exceeded the scope of the warrant.  The affidavit that provided the basis for the search warrant,

---

[3]In his brief and at oral argument, Plaintiff's counsel made conclusory arguments that such conduct supports a claim for malicious prosecution.  Because the additional testing did not initiate criminal proceedings, the Court rejects these arguments.

8

however, indicates that Deputy Wagester was investigating an OWI. (Mot. for Summ. J. Ex. E.) Under Michigan law, a driver is guilty of operating while intoxicated if he is intoxicated with liquor, a controlled substance, or both. *See* Mich. Comp. Laws § 257.625(1). Therefore, the Court concludes that testing Miller's blood for the presence of controlled substances did not exceed the scope of the warrant and Deputy Wagester is entitled to summary judgment on the search and seizure claim.

**4. Excessive Force**

Finally, Miller alleges that Deputy Wagester violated his constitutional rights by using excessive force. Miller specifically complains about his exposure to cold weather during the stop, Deputy Wagester's conduct in effecting the arrest, and the tightness of the handcuffs. To succeed on a claim for excessive force, Miller must establish that Deputy Wagester's use of force was objectively unreasonable based on a view of the facts and circumstances "from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox*, 489 F.3d at 236. Whether the amount of force used was excessive is an issue of law. *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008). In regard to handcuffs, a plaintiff states a claim for excessive force if the cuffs are excessively and unnecessarily tight and the officer ignores the plaintiff's pleas to that effect. *Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002).

Miller has failed to allege conduct on behalf of Deputy Wagester that amounts to excessive force. Although excessive force claims can be based on the conditions of the place of confinement, *see Burchett*, 310 F.3d at 945-46, Miller's claims regarding his exposure to the cold are insufficient. Deputy Wagester and Miller appear to agree that Miller was outside of his vehicle only during the time that Deputy Wagester administered the field sobriety tests

9

and placed him under arrest. Nonetheless, Deputy Wagester estimates that this period of time lasted six to eight minutes while Miller estimates that it was 45 minutes. (Wagester's Dep. at 55; Miller's Dep. at 72.) Even assuming that it was 45 minutes, however, the Court concludes that Miller's exposure to the cold did not amount to excessive force. Miller concedes that he did not complain to Deputy Wagester that he was cold and admitted that he had come from an outdoor demolition derby. (Miller's Dep. at 72, 77.) There are no allegations that Deputy Wagester left Miller in the cold longer than was necessary to conduct the field sobriety tests or that Deputy Wagester was not likewise exposed to the cold for the same amount of time. And while Miller asserts that he told jail personnel that he was cold, he indicated during the booking process that he did not need medical attention and described his present physical condition as good. (Mot. for Summ. J. Ex. G.) Given these facts, the Court concludes that Miller's exposure to the cold did not amount to excessive force.

Miller's allegations regarding Deputy Wagester's conduct in effecting the arrest are similarly insufficient to support a claim of excessive force. Miller asserts that Deputy Wagester spun him around, slammed him against his vehicle, and kicked his feet apart. Miller maintains that Deputy Wagester was not gentle in this conduct but admits that he was not hurt by it. (Miller's Dep. at 47-48, 55.) It is not objectively unreasonable for an officer to place an individual under arrest using force that does not cause harm.

Finally, Deputy Wagester did not use excessive force in handcuffing Miller. When Deputy Wagester placed Miller under arrest, he checked the tightness of the handcuffs. (Wagester's Dep. at 57-59.) Deputy Wagester then placed Miller in the back seat of his patrol car. Miller did not complain about the handcuffs until they arrived at the jail.

10

(Miller's Dep. at 22.) Miller admits that Deputy Wagester removed the handcuffs shortly after he complained but could not specifically remember the amount of time that passed. (*Id.*) Without more, there is no indication that Deputy Wagester ignored Miller's complaints about the handcuffs.[4] Therefore, Deputy Wagester is entitled to summary judgment on Miller's excessive force claims.

**B. State Claims**

Miller's state law claims present issues similar to those discussed above. Plaintiff's state law claims include false arrest/false imprisonment, malicious prosecution, assault and battery, and gross negligence. Deputy Wagester claims that he is entitled to governmental immunity on these claims. Michigan law provides tort immunity for governmental agencies and their employees when engaged in the exercise or discharge of a governmental function. Mich. Comp. Laws § 691.1407. There is no dispute in this case that Deputy Wagester is an employee of a governmental agency and that the events forming the basis for Miller's claims occurred during the exercise or discharge of a governmental function. However, a governmental employee only receives tort immunity if he acts, or reasonably believes that he is acting, within the scope of his authority and his conduct does not amount to gross negligence that is the proximate cause of the injury or damage. Mich. Comp. Laws §

---

[4] At oral argument, Plaintiff's counsel argued that officers must respond to complaints about tightness "immediately" if they are to avoid liability for excessive force. Plaintiff's counsel cited *Burchett* in support of this argument. 310 F.3d 937 (6th Cir. 2002). Having reviewed that case, the Court disagrees with Plaintiff's counsel. In *Burchett* the Sixth Circuit explained, " Our precedents allow the plaintiff to get to a jury upon a showing that officers handcuffed the plaintiff excessively and unnecessarily tightly and *ignored* the plaintiff's pleas that the handcuffs were too tight." *Id.* at 944-45 (emphasis added). The Sixth Circuit went on to describe the officer's response as "immediate" merely to explain why there was no constitutional violation in that case. *Id.* at 945.

11

691.1407(2). Furthermore, government employees are not shielded under the statute from liability for their intentional torts unless the actions constituting the intentional tort are justified. *Id.* § 691.1407(3); *Brewer v. Perrin*, 132 Mich. App. 520, 528, 349 N.W.2d 198, 202 (1984).

Deputy Wagester is entitled to summary judgment on Miller's state tort claims. As with Miller's related federal claims, the existence of probable cause is fatal to his state tort claims of false arrest/false imprisonment and malicious prosecution. *Walsh v. Taylor*, 263 Mich. App. 618, 627, 633, 689 N.W.2d 506, 513-14, 517 (2004); *see also* Mich. Comp. Laws § 764.15 (authorizing peace officers to arrest individuals who commit felonies, misdemeanors, or ordinance violations in their presence); Mich. Comp. Laws § 257.626 (identifying reckless driving as a misdemeanor). Similarly, Miller's assault and battery claim is analogous to his excessive force claim in that Miller can only recover if Deputy Wagester's conduct was objectively unreasonable. *See VanVorous v. Burmeister*, 262 Mich. App. 467, 483, 687 N.W.2d 132, 142 (2004). For the reasons discussed above, then, Deputy Wagester is entitled to summary judgment on Miller's assault and battery claim.

Furthermore, Deputy Wagester is entitled to summary judgment on Miller's claim of gross negligence. Insofar as Miller attempts to reframe his claims regarding Deputy Wagester's use of handcuffs and conduct while effecting the arrest, Michigan "has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *Id.* at 483-84, 687 N.W.2d at 143 (2004) (listing cases). The remaining basis for Miller's gross negligence claim is his exposure to cold weather during the field sobriety tests. Under Michigan's governmental immunity statute, gross negligence "means conduct

12

so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(7)(a). Under the circumstances previously discussed, the Court concludes that Deputy Wagester's decision to have Miller perform field sobriety tests on the roadside did not demonstrate a substantial lack of concern for whether injury would result. Accordingly, Deputy Wagester is entitled to summary judgment on Miller's gross negligence claim.

## IV. Municipal Liability

Finally, Miller asserts a claim of municipal liability based on alleged Sanilac County policies and practices of failing to adequately train and supervise its officers. To succeed on a municipal liability claim, a plaintiff must establish that his constitutional or federal rights were violated and that a policy or custom of the municipality was the moving force behind the deprivation of the plaintiff's rights. *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007). Because Miller has failed to establish a violation of his federal rights, his claim against Sanilac County must also fail. Therefore, Sanilac County is entitled to summary judgment.

## V. Conclusion

As discussed above, Miller has failed to establish that Deputy Wagester violated his federal rights or committed unjustified state torts. Therefore Deputy Wagester is entitled to summary judgment. Furthermore, because Deputy Wagester did not violate Miller's federal rights, Sanilac County is entitled summary judgment.

Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED**.

A judgment consistent with this opinion shall issue.

                                                                      s/PATRICK J. DUGGAN
                                                                      UNITED STATES DISTRICT JUDGE

Copies to:
Christopher Trainor, Esq.
John J. Gillooly, Esq.